The CONJUGAL SOCIETY COMPOSED of JUVENAL ROSA, Pedro & Amador De Rosa, Rosa, Rosario, Juvenal Rosa, Pedro & Amador De Rosa, Rosario, Individually, Plaintiffs-Appellants,

v.

CHICAGO TITLE INSURANCE COMPANY, First Federal Savings and Loan Association of Puerto Rico, Defendants-Appellees.

No. 81–1802.

United States Court of Appeals,
First Circuit.

June 22, 1982.

As Modified on Denial of Rehearing
July 26, 1982.

Harry Segarra Arroyo, Carolina, P. R., with whom Law Office of Harvey B. Nachman, Santurce, P. R., was on brief, for plaintiffs-appellants.

Stanley R. Segal, San Juan, P. R., with whom Ramirez, Segal & Latimer, San Juan, P. R., was on brief, for defendant-appellee First Federal Savings and Loan Ass'n of Puerto Rico.

Ana Matilde Nin, San Juan, P. R., with whom McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., was on brief, for defendant-appellee Chicago Title Ins. Co.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This case raises the question whether a suit attacking the cancellation of a performance bond and other guaranties during the foreclosure of a mortgage arises out of a transaction "involving ... banking" with-

in the meaning of the jurisdictional statute 12 U.S.C. § 632.[1]

Appellants, plaintiffs below, are Pedro Juvenal Rosa and Rosario Amador de Rosa, suing individually and as a conjugal society. They allege that they sold a parcel of land to Torre de Caparra Corp. (TCC), receiving cash and a first mortgage in the amount of $111,500 at six percent interest. TCC also mortgaged the property to Continental Mortgage Investors and one of the defendant-appellees, Chicago Title Insurance Co. (CTI). Under its mortgage, CTI guaranteed completion of construction of an apartment building on the land and issued a performance bond with a third party beneficiary clause in favor of plaintiffs guaranteeing that plaintiffs would collect their mortgage credits. Plaintiffs allege that on the basis of CTI's representations about these guaranties, they subordinated their mortgage to that of CTI. TCC then entered into a refinancing agreement with the other defendant-appellee, First Federal Savings & Loan Association of Puerto Rico (First Federal). Plaintiffs subordinated their mortgage to First Federal's new mortgage on the condition that the performance bond and guaranties of completion by CTI would remain in effect. Defendants, according to plaintiffs, then cancelled the bond and guaranties. First Federal foreclosed on its mortgage; plaintiffs received nothing.

Plaintiffs brought suit in federal court, asserting that jurisdiction lay under 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1337 (federal statutes regulating commerce). They later amended the complaint to add an additional jurisdictional ground, 12 U.S.C. § 632. The district court denied jurisdiction under section 1332 because of lack of complete diversity and under section 1337 because plaintiffs asserted no claim under a federal statute. As to section 632,

the district court determined that it did not apply because Puerto Rico is not "a dependency or insular possession of the United States" for purposes of acts relating to national banks. *Conjugal Soc'y v. Chicago Title Ins. Co.,* 497 F.Supp. 41 (D.P.R.1979). We reversed on the section 632 ruling. *Conjugal Soc'y v. Chicago Title Ins. Co.,* 646 F.2d 688 (1st Cir. 1981) (per curiam); *see First Fed. Sav. & Loan Ass'n v. Ruiz de Jesus,* 644 F.2d 910 (1st Cir. 1981). On remand, the district court concluded that jurisdiction still did not lie under section 632 because plaintiffs had alleged fraud, which sounded in tort and which did not come within "traditional banking activities," the only transactions encompassed by section 632, *Diaz v. Pan American Fed. Sav. & Loan Ass'n,* 635 F.2d 30, 32 (1st Cir. 1980). *Conjugal Soc'y v. Chicago Title Ins. Co.,* 525 F.Supp. 268 (D.P.R.1981).

The procedural mechanism for dismissal below was a Fed.R.Civ.P. 12(b)(1) motion by defendants. There is some dispute between the parties as to whether the district court construed that motion as a challenge to the sufficiency of the plaintiffs' complaint or to the facts underlying the complaint, on which jurisdiction was alleged to be based. *See* 5 Wright & Miller, Federal Practice and Procedure § 1350. We need not resolve that issue, or plaintiffs' subsidiary claim that they were improperly precluded from introducing evidence on the jurisdictional issue, because we decide that the subordination agreement, *with* its underlying financing arrangement, is clearly within the statute, 12 U.S.C. § 632.

We recently considered the scope of section 632 in *Diaz v. Pan American Fed. Sav. & Loan Ass'n,* 635 F.2d 30. We held that a district court could not entertain, under section 632, a suit that charged the malicious or negligent filing of a criminal complaint as a result of plaintiff's alleged

---

1. 12 U.S.C. § 632 provides in relevant part as follows:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involv-

ing ... banking in a dependency or insular possession of the United States, ... shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits[.]

passing of bad checks. *Id.* at 32. Section 632 reaches only traditional banking activities, not all cases in which a bank organized under federal law is a party. *Id.* Banking activities covered by section 632 include mortgage agreements, *see* 12 U.S.C. § 1464(c) (federal savings and loan associations), and foreclosures on mortgages, *Chase Manhattan Bk. (N.A.) v. Corporacion Hotelera,* 516 F.2d 1047, 1048 n.1 (1st Cir. 1975) (per curiam); *First Nat'l City Bk. v. Gonzalez & Co. Sucr. Corp.,* 308 F.Supp. 596, 599 (D.P.R.1970); *see First Fed. Sav. & Loan Ass'n v. Zequeira,* 305 F.Supp. 37, 39 (D.P.R.1969). *But cf. Gonzalez-Roman v. Federal Land Bk.,* 303 F.Supp. 482, 483 (D.P.R.1969) (action challenging prior foreclosure proceeding was attack on earlier federal judgment and did not arise from transaction involving banking). Section 632 is not limited to the original two parties to a banking transaction. In *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786 (2d Cir. 1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981), the guarantor of notes sold by the maker to obtain letters of credit from a bank was allowed to sue the bank under section 632 for allowing alleged wrongful drawdowns against the letters, *id.* at 792. Section 632 jurisdiction also exists over a claim by one cosignor of a letter of guaranty against another cosignor contesting the validity of the letter, when the letter was relied upon by a bank in granting a loan. *National City Bk. v. Puig,* 106 F.Supp. 1, 2–3 (D.P.R.1952).

■ According to the complaint in the instant case, plaintiffs agreed to a subordinate mortgage position in exchange for protection—a performance bond and a guaranty of completion—offered by defendants. The seniority of defendants' mortgages was an important factor in the mortgage transactions that defendants entered into;[2] indeed, First Federal is effectively required to take only first mortgages, *see* 12 C.F.R. § 545.6(a), (b)(1). Plaintiffs have no unconditional rights or obligations directly under the mortgage agreements between TCC and CTI and between TCC and First Federal, but they are third parties whose subordinate position was central to CTI's and First Federal's decisions to enter into the mortgage agreements. *Cf. Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786; *National City Bk. v. Puig,* 106 F.Supp. 1. Defendants' assurances to plaintiffs thus constituted part of defendants' banking transactions, and the alleged wrongful termination of those assurances was part of the mortgage foreclosure.

■ Even if, as CTI asserts, the district court was unwilling to rely on the as yet unproven existence of the guaranties and the relationship between the plaintiffs and the defendants, the facts as found by the district court, based on the stipulations of the parties, are sufficient to establish the court's jurisdiction. The district court found that "[p]laintiffs subordinated their mortgage to the mortgage in favor of Continental Mortgage. Subsequently, interim financing was provided by defendant First Federal to Torre de Caparra, but as a condition First Federal obtained from plaintiffs the further subordination of the first mortgage originally held by plaintiffs." 525 F.Supp. at 269. There should be little doubt that the refinancing by defendants on the condition that plaintiffs subordinate their mortgage in favor of defendants was a banking transaction, *see National City Bank of New York v. Puig,* 106 F.Supp. 1 (D.P.R.1952), and it is out of that refinanc-

---

**2.** The relevant paragraphs of plaintiffs' complaint are as follows:

14. The mortgage in favor of CTI was to guarantee, among other things, obligations assumed by CIT [*sic*] whereby it would finish the apartment building in the event that Torre de Caparra Corp. was unable to do so for whatever reasons.

15. In exchange of the mortgage constituted in its favor and as a reciprocal obligation, the defendant, CTI issued a performance bond number CH–1225–53–0131–2 whereby it guaranteed to the plaintiffs collection of its mortgage credits.

19. As a condition to its banking transaction First Federal obtained of the plaintiffs the further subordination of the first mortgage held by plaintiffs.

ing and subordination agreement that the current dispute between plaintiffs and defendants arose.

■ CTI suggests that section 632 jurisdiction is absent because the gist of plaintiffs' claim is negligence and conspiracy which by themselves bear no relationship to banking. Plaintiffs allege essentially, however, that they were denied rights provided by the guaranty and the performance bond.[3] Whether defendants' acts are viewed as ones in tort or contract, plaintiffs' rights are alleged to have arisen out of defendants' mortgage agreements and thus out of a transaction involving banking within the meaning of section 632. Plaintiffs have alleged facts sufficient to invoke section 632 jurisdiction.

*Reversed and remanded.*

---

**3.** The following paragraphs of plaintiffs' complaint are relevant:

27. The cancellation of the performance bond and the protections offered and accepted by the plaintiffs for subordination of their mortgage credits were all part of a design and plan to defraud within a banking transaction on the part of the defendants.

28. The cancellation of the performance bond execution of the mortgage credits and subsequent negotiations by the defendant, First Federal[,] were all part of a design and plan of a banking transaction.

29. As a result of the leaving without effect and cancellation of the performance bond by the defendants, the plaintiffs were deprived of their mortgage credits in the amount of $111,500.00, plus interest on that amount.

30. As a result of the fault, acts and negligence of the defendants, the plaintiffs have suffered losses in the amount of $500,000.00.